ANNA ROBINSON *vs.* GEORGE E. ROBINSON *et al.*

APRIL 1, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This suit in equity was brought by the complainant against her husband George E. Robinson and against Louise Boudreau, who, prior to the bringing of this proceeding, and as a creditor of said George E. Robinson, had attached his interest in certain real estate in Pawtucket standing in his and the complainant's names as tenants in common. In her bill the complainant prayed that her husband be declared to hold the legal title of an undivided one half part of said real estate in trust in her favor; that she be declared to be the owner of the legal as well as of the equitable title to the attached real estate; that the attachment placed upon said real estate by the respondent Louise Bou-

dreau be declared null and void; and that the complainant be granted certain injunctive and other relief.

The cause was heard by a justice of the superior court on bill, answer of the respondent Louise Boudreau, replication and proof. The other named respondent, George E. Robinson, made himself a party after the cause was heard in the superior court, as we will hereinafter point out. The trial justice denied and dismissed the bill and a decree to that effect was duly entered. From the entry of such decree the complainant appealed to this court.

The bill of complaint was filed June 6, 1938. The subpoena which was issued on that date was returnable to the superior court June 21, 1938. The return on this subpoena shows that due service thereof was made upon the respondent Louise Boudreau June 8, 1938. No service of this subpoena, or of any other, was ever made on George E. Robinson.

On July 18, 1938 the respondent Louise Boudreau filed an answer denying the material allegations of the bill of complaint. Thereafter her death was suggested on the record, and her sister Maria Boudreau, the administratrix of her estate, was substituted as a party respondent on October 18, 1939. The cause was heard in the superior court in January 1940, and at the end of the hearing the trial justice rendered his decision from the bench dismissing the bill. The final decree was entered the "26th day of January, 1940, as of January 25, 1940." Although respondent George E. Robinson had been a witness for the complainant at the hearing of this cause, he took no action to clarify his position as a respondent until some two months after the entry of such decree.

Under date of March 21, 1940 the following stipulation signed by him personally was filed in the superior court: "I hereby acknowledge due service of the subpoena issued on the bill of complaint, admit the allegations in said bill, and

join in the prayer thereof, as of June 10, 1938", a date which was prior to the return-day of the original subpoena. Also on March 21, 1940, and over his signature, he stipulated as follows: "I hereby waive notice of the hearing on the allowance of the transcript, and assent to its being allowed at any time."

It is clear from the above record, however, that George E. Robinson was really not a party respondent with an interest adversary to the complainant's. Although she contends that her husband was, to a certain extent, hostile to her, nevertheless a consideration of his testimony fails to bear out this contention. In fact, his stipulation above set forth and the evidence presented by him, in so far as it went, tended to aid the complainant.

After examination of the rather voluminous transcript of the testimony we feel that it is not necessary to set out a detailed statement of the evidence, but that a brief summary of the important portions of it is sufficient. This is because the disposition of the cause depends largely upon what view is taken of the conflicting evidence. This involves primarily a consideration of the credibility of the witnesses. The trial justice, who had the opportunity, which we do not have, of hearing and seeing them testify, was in a more favorable position than we are to pass upon that issue.

It appears from the evidence that on August 24, 1912 the complainant and her husband bought the real estate in question for $2600, of which sum $800 was paid in cash, and the balance was obtained from a bank by a mortgage on such real estate. The application for this mortgage was signed by the complainant, and gave the names of George E. Robinson and Anna Robinson as the owners of the property. The deed, which was to them as tenants in common, and the mortgage were drawn by a representative of the bank. This mortgage was discharged in 1918.

The complainant contends that all money that went into this transaction was her own. While it is true that for a

considerable number of years she was at certain times engaged in gainful occupations, yet her husband George E. Robinson, who was a plumber, was also during that time employed, except during a period when he was ill. The Robinsons had one child. From the time that the real estate was purchased up to the hearing in this cause the family relations of the Robinsons apparently continued more or less normally, though it appears from the evidence that, at certain times, the husband's conduct was decidedly questionable. However, as we have before indicated, he apparently testified willingly on his wife's behalf, and was in no sense a party adversary to her interests.

The complainant also gave evidence that she first discovered that the real estate stood in the names of herself and her husband as tenants in common when the bank, which had retained the deed of the real estate in its files from the time of the purchase in 1912, turned over the deed to her in 1922. She admitted, however, that during all this time she received tax, water and insurance bills in the names of both herself and her husband. No representative of the bank was called as a witness by the complainant either as to the circumstances surrounding the drawing of the deed and the mortgage, or as to the retention of the deed by the bank for nearly four years after the mortgage had been discharged; and no reason was offered by the complainant for her failure to produce such evidence.

The complainant further testified that since she became aware that her husband's name was on the deed as a tenant in common of the property she asked him, and thereafter continued to ask him, for a deed of his interest, and that he repeatedly expressed his willingness to sign such a deed. The reason that she gave why she never pressed the matter to a completion, and why her husband had never signed such a deed, was that she was "so busy . . . had no time to go and have it done . . . never thought of going to a lawyer . . . ."

The husband's testimony on this point was to the same effect, but his reason for not giving her a deed of his interest in the property was entirely different. The following are a few excerpts from his testimony: "Q. Did your wife ever ask you to straighten out the title to the property? A. She did. . . . Q. How many times did she ask you? A. Hundreds of times. Q. And what did you tell her? A. I was just stubborn enough that I wouldn't. Q. You refused to turn it over to her, is that right? A. Because I knew it always belonged to her. Q. You refused to turn it over to her, didn't you? Is that right? A. No, I didn't refuse at any time. Q. Well, what did you do? A. I kept putting it off; forgot it. . . . Q. You put off conveying the property to her because you considered it was hers? A. Sure I did."

On December 6, 1935 George E. Robinson procured a loan of $2000 from Louise Boudreau to assist him in carrying out certain contracts which he had taken for plumbing work at the state institutions, giving her his personal note. The work under these contracts was completed and payment therefor was received by Robinson, but he did not repay the above loan. When Louise Boudreau discovered that he had received such payment, she placed on his interest in the real estate in question the attachment which is involved in this cause.

The complainant also testified that on several occasions she told Louise Boudreau, with whom she had been on friendly terms for many years prior to 1929, and whom she had seen occasionally between that date and 1935, that the property in question "wasn't George's property, it was my own property, and it was my own home." She further testified that, on learning of the negotiations concerning the above-mentioned loan of $2000, she went to Louise Boudreau's home and warned her not to advance the money to her husband, and in any event not to look to her, the complainant, or to her property for payment of the loan. This portion of the complainant's testimony was flatly contra-

dicted by Maria Boudreau, who lived with and was very close to her sister because of the latter's ill health during the later years of her life, and who was present at the time when the complainant claimed she gave Louise Boudreau the above warning.

The complainant argues that the decision of the trial justice was erroneous, first, because, in her opinion, the evidence showed that the complainant was the sole owner of the real estate in question; and second, because complainant established knowledge by respondent Louise Boudreau, prior to her loan, of such ownership. In passing upon these contentions the credibility of the witnesses became a controlling consideration, since the conflicting testimony was open to interpretations and inferences which might reasonably lead to different conclusions. In that connection the conduct and acts of the complainant and her husband in relation to the real estate in question during the long period from 1912 up to the institution of the present suit in 1938 were important, and apparently were considered by the trial justice when he rendered his decision. Moreover, the respondent Maria Boudreau was at some disadvantage because her intestate, Louise Boudreau, by reason of her death before the cause was heard, was unable to testify.

In his decision the trial justice, in passing upon the credibility of the complainant and of her husband, said: "Much of the testimony of Mrs. Robinson is colored. The Court will not say that Mrs. Robinson deliberately falsified, but she certainly tried to color her testimony in order to create an impression which she honestly knows does not exist. The court feels that the testimony offered by her husband in support of Mrs. Robinson's claim is given with a view to help Mrs. Robinson and himself." He also found "as a fact from the testimony in the case that at no time did Mrs. Robinson declare to Louise Boudreau that the house which is the subject of this bill of complaint was her house and did not belong to her husband."

To prove a resulting trust by reason of the payment by one person of the whole or part of the purchase price of property conveyed to another person, especially if the relation between them is that of husband and wife, the evidence must be full, clear and convincing. *Angell* v. *Angell,* 64 R. I. 264, 11 A. 2d. 922; *Oldham* v. *Oldham,* 58 R. I. 268. The trial justice apparently applied this rule of law in considering the facts before him. It is clear that he did not believe the testimony of the complainant and that of her husband, which was the only substantial evidence supporting the complainant's contentions. Further, in our opinion, it was not shown that he overlooked or misconceived any material evidence in the instant cause. From our examination of the evidence we cannot say that his decision was clearly wrong and, therefore, we are not justified in disturbing his findings.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Thomas L. Carty,* for complainant.

*Woolley, Blais & Quinn,* for respondent Maria Boudreau, Admx.